**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| MARA SILVIA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 1:23-cv-12672-JEK |
| KOHL'S, INC., BURLINGTON CENTERS, LLC, and DIVISIONS, INC., | ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM AND ORDER ON BURLINGTON CENTERS, LLC'S MOTION FOR SUMMARY JUDGMENT

**KOBICK, J.**

The plaintiff in this negligence action, Mara Silvia, injured her ankle after tripping in a pothole in the parking lot outside her workplace at a Kohl's, Inc. department store. Silvia claims that the remaining defendants—Burlington Centers, LLC, the landlord of the parking lot, and Division's, Inc., the company retained by Kohl's, the tenant, to maintain the parking lot—were negligent in maintaining and repairing the parking lot. Pending before the Court is Burlington Centers' motion for summary judgment. That motion will be granted because the commercial lease between Burlington Centers and Kohl's assigned Kohl's responsibility for maintaining and repairing the parking lot, and Burlington Centers did not retain sufficient control over a common area linked to Silvia's injury to subject it to liability.

### BACKGROUND

The following facts, unless otherwise noted, are either undisputed or recounted in the light most favorable to Silvia, as the non-moving party, where supported by record evidence. *Dixon-Tribou v. McDonough*, 86 F.4th 453, 458 (1st Cir. 2023).

Silvia was employed by Kohl's at its department store in Burlington, Massachusetts. ECF 65-1, ¶ 1. On November 22, 2020, at 5:30 p.m., she exited the store, walked into the parking lot, and stepped into a pothole on the surface of the parking lot. *Id.* ¶¶ 2-3. Silvia claims to have sustained an injury to her left ankle as a result of stepping into the pothole. *Id.* ¶ 4.

At the time of the accident, the owner and landlord of the property, including the parking lot, was Burlington Centers. *Id.* ¶ 7. Kohl's, as the tenant, leased and occupied the entire premises, including the parking lot, pursuant to a commercial lease. *Id.* ¶¶ 7-9. The lease was in full force and effect on November 22, 2020, and the term of the lease did not expire until January 31, 2023, after which it was automatically extended for another five-year term. *Id.* ¶ 8. The lease stated that the "Tenant shall maintain all of the Common Facilities in reasonably good repair and condition, reasonably free of refuse and obstructions, and, to the extent Tenant deems necessary for the conduct of its business." ECF 64-3, at 112. Common Facilities included "all parking areas, aisles, driveways, entrances, exits, sidewalks, roadways, service areas, service roads, exterior lighting facilities, surface drainage facilities, pavement striping, and traffic control signs, including directional signs at the entrances and exits." ECF 65-1, ¶ 10; ECF 64-3, at 112. The lease further provided that "[a]ny repair, alteration, change or improvement shall be executed in a good and workmanlike manner in accordance with all appliable regulations and requirements of any state or local government." ECF 64-3, at 113.

Silvia brought this lawsuit against Kohl's in Middlesex Superior Court in October 2023. ECF 1-1, at 2. Invoking diversity jurisdiction, Kohl's removed the case to this Court. ECF 1, ¶¶ 8-9. Silvia filed an amended complaint in May 2024, adding Burlington Centers as a defendant. ECF 23; ECF 65-1, ¶ 5. With the Court's leave, she filed a second amended complaint in July 2024, adding Divisions, the company retained by Kohl's to maintain the parking lot, as a third defendant.

2

ECF 31. The second amended complaint asserted claims of negligence against Kohl's, Burlington Centers, and Divisions. ECF 31, ¶¶ 45-59; ECF 65-1, ¶ 5. In April 2025, Silvia dismissed her claim against Kohl's after receiving worker's compensation benefits pursuant to M.G.L. c. 152. ECF 54; ECF 65-1, ¶ 6. Burlington Centers moved for summary judgment on the negligence claim against it following the conclusion of discovery. ECF 62. After receiving Silvia's opposition and holding a hearing, the Court took the motion under advisement. ECF 65, 72.

## STANDARD OF REVIEW

Summary judgment is appropriate when, based upon the record, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). To prevail, the moving party must show that "there is no factual determination which a 'rational factfinder' could make as to the 'existence or nonexistence' of a fact that 'has the potential to change the outcome of the suit.'" *Gibson Found., Inc. v. Norris*, 88 F.4th 1, 5 (1st Cir. 2023) (quoting *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 4-5 (1st Cir. 2010)). Courts "must consider the record and the reasonable inferences drawn therefrom in the light most favorable to the nonmovant," but "need not credit 'conclusory allegations, improbable inferences, [or] unsupported speculation.'" *Dixon-Tribou*, 86 F.4th at 458 (quoting *Lahens v. AT&T Mobility Puerto Rico, Inc.*, 28 F.4th 325, 333 (1st Cir. 2022)). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

**DISCUSSION**

Burlington Centers contends that it is entitled to summary judgment on Silvia's negligence claim because commercial landlords do not have a duty to maintain a leased premises beyond the terms of the lease, and because it had no control over a common area that caused Silvia's injury. "To prevail on a claim of negligence, 'a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage.'" *Lev v. Beverly Enters.- Mass., Inc.*, 457 Mass. 234, 239-40 (2010) (quoting *Jupin v. Kask*, 447 Mass. 141, 146 (2006)). "The existence of a duty of care is a question of law and, therefore, is an appropriate subject for summary judgment." *Id.* at 240 (citation omitted). "If a defendant does not owe a legal duty to a plaintiff, then there can be no actionable negligence." *Id.* (citing *Remy v. MacDonald*, 440 Mass. 675, 677 (2004)); *see Petrell v. Shaw*, 453 Mass. 377, 381 (2009) (while negligence claims usually involve a question of fact, courts "may decide the issue as a matter of law when no rational view of the evidence permits a finding of negligence").

A landlord's duty to maintain leased premises beyond what parties agreed to under the terms of the lease differs between commercial and residential leases. Residential landlords have a general duty to "act as a reasonable person under all of the circumstances including the likelihood of injury to others, the probable seriousness of such injuries, and the burden of reducing or avoiding the risk." *Young v. Garwacki*, 380 Mass. 162, 169 (1980). Commercial landlords, in contrast, lack such a duty. *Humphrey v. Byron*, 447 Mass. 322, 327 (2006) (declining to extend the duty of residential landlords in *Young* to commercial landlords). A commercial landlord may nevertheless be liable in tort for personal injuries if "'either (1) [it] contracted to make repairs and made them negligently, or (2) the defect that caused the injury was in a common area, or other area appurtenant

4

to the leased area, over which the lessor had some control.'" *Id.* at 328-29 (quoting *Chausse v. Coz*, 405 Mass. 264, 266 (1989)). Silvia does not dispute that Burlington Centers never contracted, in the lease or otherwise, to make repairs to the Kohl's parking lot. ECF 65-1, at 5, ¶ 13. She does, however, argue that Burlington Centers had some control over the parking lot, which, in her view, was in a common area.

The question, then, is whether a reasonable jury could find, based on the undisputed material facts, that Burlington Centers had some control over a common area that caused Silvia's injury. Silvia first contends that the Kohl's parking lot constituted a common area over which Burlington Centers had some control. Burlington Centers disputes that the parking lot is a common area under Massachusetts law. Burlington Centers has the better argument. "Massachusetts case law recognizes a distinction between the leased premises themselves and 'common' or 'appurtenant' areas outside the leased premises, such that ordinarily, the tenant is responsible for the leased premises and the landlord, perhaps jointly with the tenant, is responsible for common or appurtenant areas." *Humphrey*, 447 Mass. at 329 (holding, in a case where the tenant "leased the entire building from the landlord, including the stairway where [the] accident occurred," that it was the tenant's "responsibility to keep the leased premises safe, as nothing in the lease impose[d] this responsibility on the landlord"). Silvia does not dispute that Kohl's, as the tenant, leased and occupied the entire premises, including the parking lot. ECF 65-1, ¶ 9. The fact that the lease defined the leased premises to include "Common Facilities," which in turn was defined to include "parking areas," does not convert the parking lot to a "common area" under Massachusetts law. ECF 64-3, at 101, 112. The parking lot was within the leased premises, not a common area, and Kohl's was therefore "responsible for keeping the premises safe, absent a contractual

5

undertaking to the contrary by the landlord." *Sheehan v. El Johnan, Inc.*, 38 Mass. App. Ct. 975, 975 (1995) (citations omitted).

But even if the Kohl's parking lot were within a common area, the evidence would not permit a reasonable jury to conclude that Burlington Centers retained sufficient control over the parking lot to subject it to liability. The lease clearly assigned Kohl's responsibility for maintaining and repairing the parking lot. It stated that the "Tenant shall maintain all of the Common Facilities in reasonably good repair and condition, reasonably free of refuse and obstructions, and, to the extent Tenant deems necessary for the conduct of its business." ECF 64-3, at 112. It defined "Common Facilities" to include "all parking areas." ECF 65-1, ¶ 10; ECF 64-3, at 112. And it made Kohl's "responsible for the payment of all maintenance" costs. ECF 64-3, at 104; ECF 65-1, ¶ 11. Through these terms, Burlington Centers aimed to "pass all the responsibility regarding th[e] property onto Kohl's via the lease" and then impose on Kohl's the "responsibility to hire competent people to maintain the premises." ECF 65-1, ¶ 16. Kohl's was responsible for "defin[ing] reasonably good repair and condition," and for ensuring compliance. *Id.* ¶ 17. The lease did not, moreover, contain provisions giving Burlington Centers the right to inspect the property or otherwise monitor whether Kohl's complied with its contractual maintenance responsibilities, and Burlington Centers did not undertake those activities during the term of the lease. *Id.* at 5, ¶ 14.

Silvia argues that Burlington Centers retained control over the parking lot because it had the right to assert that Kohl's breached the lease if Kohl's did not comply with the maintenance provisions, just as it would if Kohl's did not pay rent or property taxes. But the possibility of holding a tenant in breach of a lease does not qualify as the type of "control over maintenance or repair of the leased premises" that can render a commercial landlord liable for a third party's injury. *Humphrey*, 447 Mass. at 330. In *Humphrey*, for example, the landlords retained the right to enter

6

the premises, use common driveways and parking spaces, and prohibit repairs and alterations without their approval. *Id.* Affirming the entry of summary judgment in favor of the landlords, the Supreme Judicial Court held that, as a matter of law, these provisions did not give the landlords sufficient control over the leased premises to subject them to liability. *Id.* at 330-31 (level of control depends, in part, on landlord's reservation of "'various rights'" over the leased premises (quoting *Tuchinsky v. Beacon Prop. Mgmt. Corp.*, 45 Mass. App. Ct. 469, 471 (1998))). Burlington Centers' authority to enforce the lease agreement here amounts to far less control over the leased premises than the landlords retained in *Humphrey*, so it, too, cannot be liable for third-party injuries on those premises.

Nor, as Silvia claims, is the question whether Burlington Centers exercised control over the parking lot inevitably a question of fact to be determined by the jury. Silvia, as the nonmovant, "must point to 'competent evidence' and 'specific facts' to stave off summary judgment." *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (quoting *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)); *see Lopera v. Town of Coventry*, 640 F.3d 388, 403 (1st Cir. 2011) (the non-moving party must "make more than conclusory allegations, improbable inferences, or unsupported speculation" (quotations and citation omitted)). And she has not pointed to evidence that gives rise to a dispute of material fact over whether Burlington Centers retained control over the parking lot. On this record, even if the parking lot were a common area, no reasonable jury could conclude that Burlington Centers retained enough control for it to be liable when lease provisions allocated full responsibility for the parking lot's maintenance and repair to Kohl's. Accordingly, Burlington Centers is entitled to summary judgment on Silvia's negligence claim.

## CONCLUSION

For the foregoing reasons, Burlington Centers' motion for summary judgment, ECF 62, is GRANTED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: June 2, 2026